McKinney, J.
delivered the opinion of the court.
This is an action of replevin, commenced in the Circuit Court of Davidson. The facts of the case were agreed upon in the court below, and are as follows, viz, at the March term, 1848, of the Federal Court for the District of Middle Tennessee, which commenced its session on the first Monday, being the sixth of said month, a judgment was recovered against Charles F. Berry, in favor of Innskeep, Moulton & Woodruff, for the sum of #1316 68 debt, exclusive of damages and costs.
It appears from the record of the cause that, on the third day of the term, viz, the 8th day of March, a judg *318 ment by default was taken against said defendant for failing to plead according to a rule given by the plaintiffs. The only entry of said judgment is in the following words: “No plea being filed, plaintiffs by attorney take judgment by default,” but no judgment was, in fact, entered.
The following additional entries, from the record of the cause, are also incorporated into the statement of facts agreed upon, viz, “ Thursday, 9th March, court adjourned until to-morrow morning, 10 o’clock. Friday, March 10 ; court met according to adjournment. The plaintiffs appear by their attorney, and a judgment by default having been taken in this cause on the 8th of March, 1848, and no motion having been made to have the same set aside, it is therefore considered by the court that said judgment by default be affirmed, and that plaintiffs recover against said defendant thirteen hundred and sixteen dollars and sixty-eight cents, the balance of debt in the declaration mentioned, and the further sum of forty-four dollars and twenty cents, their damages sustained by reason of the detention thereof, and their costs in this behalf expended, and that execution issue.”
It further appears, that on the day said judgment was rendered, to wit, 10th March, 1848, the defendant therein, Charles F. Berry, made a deed of trust, conveying certain real and personal property, situated in Nashville, and including his stock of goods, debts, accounts, &c., to the plaintiff in this action, Daniel Berry, in trust, to indemnify his accommodation endorsers, and also to secure certain preferred creditors, not including the plaintiffs in said judgment. The trustee is empowered to take immediate possession of the property, and to sell the same upon such terms as will make it yield the best price; also, to collect *319 the debts, and apply the proceeds in payment of the debts in the order specified in the schedule attached to the deed. Said deed was duly acknowledged and deposited with the Register of Davidson county, where both the bargainor and trustee resided, on the day of its date, at fifty-one minutes past 9 o’clock, A. M., as appears from the Register’s certificate thereon, and as is also admitted by the parties; and it is further admitted, and agreed by the parties, upon the record, that the judgment above mentioned was not rendered until about half-past 10 o’clock, A. M. of the same day.
It is further agreed that, on the 20th of March, 1848, an execution was issued upon said judgment, and delivered to the defendant Clements, who is the Marshal of said District, and was by him levied upon the stock of goods conveyed in said deed of trust, which were valued at $1402 00. And, thereupon, this action was instituted, and the goods replevied pursuant to the act of 1846, ch. 66. The parties agreed that if, upon the foregoing facts, the law was with the plaintiff judgment should be rendered for him; if otherwise, then for the defendant. The Circuit Judge declared the law to be in favor of the defendant; and the plaintiff appealed in error to this court.
The question presented for adjudication is, whether the lien of said execution, or that of the deed of trust, first attached upon the goods in question?
The counsel for the defendant insists upon the priority of the lien of the execution upon the principle of the common law, that an execution binds the personal property of the judgment debtor from its teste, which, if awarded in term time, is the first day of the term at which the judgment was rendered. The general terms in which this legal proposition is asserted, in some of the books *320 seem to have led to some contusion and misapplication of what we understand to be the correct principle.
It is admitted that the judgment itself, upon which the execution in this case issued, could not be held to relate, so as to form a lien upon the real estate of the debtor, at least, as against a bona fide purchaser, for a valuable consideration beyond the true time of its rendition. And this leads to the inquiry, whether, as ■ against such' a purchaser, the lien of the execution, upon the personal property of the debtor can be held to relate to an earlier, or different period, from that of the judgment; in other words, can it relate to a time anterior to the real or supposed existence of the judgment? The idea of an execution, without a judgment to support it, in which it inheres, and from which it derives its existence, cannot, in law, be conceived of. It will be manifest, we think, from a careful examination that in England, before the statute 29 Charles II, ch. 3, the lien of the judgment, as to the real estafe, and the lien of the execution, as to the personal, were coeval and coexistent; and this is so, because the judgment, as the principal, draws after it, as an incident, the execution, with all its consequences, the lien among others.
Both liens related either to the time, or supposed time of the signing of the judgment; and the relation of the execution was solely in consequence, and by force of the relation of the judgment, not independent of it.
Before the statute of Charles II, the relation of both judgment and execution, if the latter bore teste of the term in which the judgment was rendered, was to the first day of the term, because, by fiction ' of law, the judgment was taken to have been rendered on that day. This doctrine of relation to the -first day of the term, had *321 its origin in another legal fiction, nanjely, that the whole term was, in consideration of law, but one day; and that the day on which the term commenced. Hence, although in truth, the term consisted of several days, or weeks, yet all judgments and other proceedings had relation to the first day, and by intendment of law, were entered on that day, unless from something on the face of the record itself, it appeared that they had been entered of a later day. But it was a'maxim of the common law that fictions, which were invented for the advancement of justice, “should never extend to work an injury.” 3 Black. Com., 43. Whenever, therefore, a fiction would work injustice, because of its being inconsistent with the truth, a court of law ought to look to real facts. 3 Bl. Com., 317; 3 Dane, 516 ; 2 Burr, 962.
This fiction of relation might, therefore, be repelled) whenever necessary to the attainment of justice, by showing the true time of signing judgment, provided this could be made appear from any entry or memorandum in the record. In 3d Salk., 212, it is. said, a judgment shall have relation to the first day of the term, as if it was given on that very day, unless there is a memorandum to the contrary, as where there is a continuance of the cause, until another day in the term. And in 2d Tidd, 840, it is laid down, that “ the judgment, by general intendment of law, has relation to the first day of the term, whereof it is entered, unless any thing appear on the record showing that it cannot have that relation.” See also 3 Burr, 1595; so also a memorandum upon the record showing that the declaration in the cause was not filed, until some day in the term, will have the same effect. Bull. N. P., 137; 3 Burr,, 1241; 1 Term Rep., 116.
Again, it is laid down, that, “ although the law does not, *322 in general, regard a fraction of a day, yet, a day is always considered to be devisible for the purpose of 'justice.” 2 Stark. Evi., 787, (edition of 3837;) 7 Com. Dig., 398; 2 B. & A., 586; and in Coke Littl., 185, it is said, “that in consideration of law, there is priority of time in an instant,” and it may be divided into two parts, (see note T, page 787, Stark. Evi., above cited;) but the law will not permit it to be carved out into three. Fitz Williams’ case, 6 Co., 33.
From the foregoing authorities it is clear, that, whenever the true time of signing judgment could be ascertained from any thing upon the record, the fiction of relation to the first day of the term was displaced, and ceased to operate; and the relation of the judgment in such case was only to the true time of its rendition. And the fact as to time, when relevant and susceptible of being established by record evidence, might be averred and proved whenever necessary to prevent injustice, or to protect the rights of strangers to the judgment. But, from the absolute verity imputed to a record by the common law, it was not admissible, by any inferior grade of evidence, to inquire into, or prove the time of signing.judgment, in contradiction of the legal fiction that it was signed on the first day of the term, and that being by intendment of law the date of the judgment.
This difficulty was obviated by the statute 29th Charles II, which requires that the day of the month and year upon which judgment is signed, shall be entered upon the margin of the record, when the judgment is recorded, and that, as to real property, such judgment shall relate as against bona fide purchasers for valuable consideration, only to the time of signing. Com. Dig., vol. i, p. 237. And, by this statute, it was further enacted that execution *323 should only bind the personal property from the time the writ was delivered to the Sheriff, who was required to endorse thereon the day of receiving the same. Yet it is held that, as against the defendant, though not as to a bona fide purchaser, or stranger, the goods are bound from the teste of the writ, as before the statute; lb., page, 238, Skin., 257, 2 Mod., 310. And, since this statute, the relation of judgments and executions, .except as .against purchasers and strangers, is to the first day of the term at which the judgment was rendered or the teste of the writ, as at common law.
But, it has been held, that the statute of 29 Charles II is not in force in this State, and the decision has been too long acquiesced in to be now questioned. It remains, therefore, to inquire what change of the common law upon this subject has been introduced in this State by legislative enactment, or long established practice in our courts.
The act of 1809, ch. 49, sec. 20, requires “ that the minutes of the respective courts within this State, for each preceding day of the session, shall be read in open court on the morning of the succeeding day.” And, by a practice coeval with the act, and founded perhaps upon its proper construction, the record of each day’s proceedings is signed by the presiding judge, or judges, and, in addition, the record of each day shows the precise time to which the court is adjourned on the succeeding day. Furthermore, by the act of 1803, ch. 6, sec. 2, it is made the duty of the clerk “ to endorse upon the writ of execution the day and year the judgment was rendered by virtue of which said execution issued.” And, by the act of 1794, ch. 1, sec. 9, the sheriff’, or other officer, is *324 required to mark,, on each process, the day on which he shall have received it.” *
It is not our purpose, in citing these various enactments, to show that they were designed by the legislature to effectuate all the objects of the 29 Charles II, above referred to, for this would be to come in conflict with the settled rule in this State, in relation to the lien of executions upon personal property; but, that they fully attain what may perhaps be regarded as the most important object of that statute, namely, that the time of signing judgment should be entered upon the record. Under our practice the proceedings of the term are, contrary to the practice at the common law, separated and distinguished by the division of days ; the record shows the day on which the judgment is rendered,' and the date thereof is endorsed upon the execution, to the end perhaps that the officer charged with the execution of the process might be enabled more easily to discriminate between such alienations of property by the debtor as were valid, or void, as against the judgment or the execution creditor. Inasmuch therefore, as, under our law, the precise day on which judgment is rendered is fixed and ascertained by the record, it necessarily follows, upon common law principles, that it cannot relate beyond that day as against bona fide purchasers for valuable consideration: nor can the execution issued thereon, if tested of the same term of the judgment, as against such purchasers, relate beyond the date of the judgment. And, as the hour of the meeting of the court on each day of the term, under our practice, is ascertained by the record, the relation of the judgment, or execution, cannot extend beyond that hour. But, we do not think it admissible to show, by parol evidence, the precise hour of the day in which the judg *325 ment was rendered. This would be not only to violate principle, but to establish a most- dangerous and impracticable rule.
We do not intend to be understood as holding that, as between creditors, judgments do not relate to the first day of the term at which they were rendered, and executions to their teste. For - the attainment of justice, the fiction of relation has been held to exist in England, as to creditors, as well since as before the statute of 29 Charles II, and such is the settled law of this State.
Hence, it has been ruled by this court that several executions issued upon judgments rendered on different days of the same term, will, as between creditors, equally relate to their teste; and, if it were not so, gross injustice would be done. The creditors may be equally meritorious and equally vigilant, yet, from the arbitrary order of causes upon the docket, and the course of business in the court— over all which they have no control — they cannot all obtain judgment at the same instant, nor perhaps on the same day of the term; but, as they stand in equal right, the fiction of relation was admitted to prevent the palpable injustice of one having priority, by mere accidental' causes, over others equally meritorious.
Applying the foregoing principles to the facts of the case' under consideration, it results that the execution under which the defendant acted did not, at most, relate to, nor did its lien attach upon the goods in question, at an earlier period than the hour of the meeting of the court on the day the judgment was rendered, which we learn from the record was ten o’clock, A. M.; and this was subsequent to the time when the lien of the deed of trust took effect, as declared by the act of 1841, ch. 12, sec. 2, which in substance provides, among other things, that the *326 Register of each county shall note in a book to be kept by him the day and hour of the reception of all deeds and other instruments left to be registered; “ and every deed and other instrument shall be considered as registered, and take effect at the time so noted.”. The deed in this case was deposited with the Register at fifty-one minutes after 9 o’clock, A. M., of the same day.
It does not, therefore, become necessary to put the decision of this case upon the agreement of the parties, fixing the point of time at which the judgment was rendered.
Second: The defendant’s counsel further insists that the date of the supposed judgment by default, on the 8th of March, should be regarded as the. true date of the judgment in this case ; and the action being in debt, in which the judgment would have been final, if not subsequently set aside ; such would probably have been the conclusion of law had a formal judgment been entered up; but this was not done. The mere entry upon the record, that the “plaintiffs by attorney take judgment by default,” was wholly inoperative ; it could have formed no lien, nor have authorized the issuance of an execution; neither could it impart any legal efficacy to the subsequent judgment, which stands wholly independent of it, and operates etc proprio vigore.
Upon the whole record, we are of opinion that the law of the case is with the plaintiff.
The judgment of the Circuit Court will, therefore, be reversed, and judgment will be entered in favor of the plaintiff.